[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 382.]

THE STATE EX REL. ONDUSKO, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Ondusko v. Indus. Comm*., 1997-Ohio-379.]

*Workers' compensation—Interlocutory award of permanent total disability compensation does not conclusively establish a claimant's right to continue permanent total disability compensation beyond the closed period awarded in the order.*

(No. 95-795—Submitted August 26, 1997—Decided September 17, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD03-320.

———————————

{¶ 1} Appellee-claimant, George Ondusko, sustained two injuries in the course of and arising from his employment with David Black General Contractor and Jarvis, Downing & Emch, respectively. In 1989, claimant moved appellant, Industrial Commission of Ohio, for permanent total disability compensation. On June 13, 1990, claimant's application was heard by a deputy of the commission, who issued the following order:

"FINDINGS OF FACT AND ORDER OF THE COMMISSION

"INTERLOCUTORY ORDER

"* * *

"It is the finding of the Commission that the claimant is permanently and totally disabled, that compensation for such disability be awarded 100% in claim # 83-19303 from 6-14-90 to 1-6-91; further payment of compensation [is] to be considered at the next scheduled hearing on the issue of continuation of permanent and total disability; that the Application be granted to the extent of this order * * *.

"Claim files to be referred to RHDIV [Rehabilitation Division] for an evaluation of the claimant's rehabilitation potential * * *. Once [the] report is on

file, claim files [are] to be referred to the Legal Section for preparation of statement of facts to be completed within 71 days from the date the rehabilitation report is on file and set for hearing before the members of the Industrial Commission on the issue of continuation of the award of permanent and total disability compensation.

"The reports of doctor(s) Holbrook, Cohen, Turton and J.Q. Brown were reviewed and evaluated.

"This order is based particularly upon the reports of doctor(s) Holbrook, Cohen, Turton and J.Q. Brown[,] a consideration of the claimant's age, education, work history and other disability factors including physical, psychological and sociological, that are contained in the instant application, the evidence in the file and the evidence adduced at the hearing, including the Permanent Total Hearing Worksheet."

{¶ 2} That order was approved by Industrial Commission members Smith, Bell, and McAllister.

{¶ 3} A series of interim orders ultimately extended permanent total disability compensation to August 23, 1992. During that period, the membership of the commission changed significantly. Also during that period of extension, claimant's rehabilitation file was closed. The closure report stated:

"Mr. Ondusko is a 54 year old injured worker with a high school education and a certificate for T.V. repair, which he completed in 1956. He has worked as a laborer-pipelayer (869.664-014/heavy strength range) and a coal mine supervisor (181.167-018/light strength range). He recently completed a pain and stress program at the J.L. Camera Center and is currently functioning in the light strength range, with limitations in stoop, bend, and carry activities. Although the mine supervisor position is within Mr. Ondusko's present strength range, it is not within his physical abilities. This position requires a great deal of walking over uneven surfaces which is beyond Mr. Ondusko's physical ability. His certificate in T.V. repair is outdated and would not be useful in today[']s market. Therefore, Mr.

Ondusko does not have any transferable skills within his present strength range. The following are additional barriers to Mr. Ondusko's return to work:

"(1) Weight (5'8" — 286.5 pounds).

"(2) Diabetic condition for which he has been on a strict diet which he has difficulty observing.

"(3) Questionable motivation.

"(4) Social Security Disability payments.

"(5) Expected starting salary of $25,000 to $30,000 per year.

"(6) Not wanting to relocate and the local economy not appearing to support a job search.

"(7) Has not worked since September 1983.

"At the beginning of his rehabilitation program at the J.L. Camera Center[,] Mr. Ondusko walked with a cane and could only walk 15 minutes. At discharge, he was walking without a cane for 35 minutes. He has, at discharge, a sitting tolerance of an average of 60 minutes and a standing tolerance of an average of 40-60 minutes. Mr. Ondusko participated in work circuit tasks at J.L.C.C. and had frequent pain[,] causing the need for increased rest breaks. Though Mr. Ondusko made slight improvements in his [illegible] capacities, he is still physically limited in regards to employability.

"* * *

"Mr. Ondusko was reported as having questionable motivation. He had problems with punctuality as well as a couple of instances of not wanting to leave the residence hall at all. It is reported that he had to be spoken to on a periodic basis in regards to his behavior and verbal conduct in interactions with fellow injured workers. His interpersonal skills appeared abrasive to some people. It was reported also that he stated he did not want to work for low pay and didn't know what he could do to make as much money as he is making while collecting SSDI and compensation.

"Upon the analysis of variables which affect this case, it is determined that Mr. Ondusko does not have a realistic opportunity of returning to employment. Therefore, the provision of additional rehabilitation services would not be expected to significantly improve his re-employment status."

{¶ 4} On August 18, 1992, claimant's application for permanent total disability compensation was heard by commissioners Colasurd, McAllister, Geltzer, and Mayfield. Relying on Doctors Turton, Brown, and Holbrook, the commission denied further permanent total disability compensation. The claimant's request for reconsideration was granted, as the order "may have violated the guidelines set forth in *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203 [567 N.E.2d 245]."

{¶ 5} On March 17, 1993, the commission again denied claimant's application. Claimant again successfully moved for reconsideration and on August 27, 1993, a third denial order issued, which read:

"The order is based particularly upon the reports of Doctor(s) Turton, Brown, Holbrook and J. Ruth, M.S.[,] evidence in the file and evidence adduced at hearing.

"It is found[,] based upon a review of physical, psychiatric and vocational evaluations in file[,] that the claimant retains the residual functional capacity to perform sustained remunerative employment. From a physical perspective it is found the claimant retains the residual functional capacity to perform sedentary work duties. John Q. Brown, M.D., disinterested orthopedic specialist, found a 22% impairment based upon the allowed physical conditions. He indicated that while the claimant could not return to a labor job in construction, there would be many forms of sustained remunerative employment that the claimant could engage in since all of his orthopedic complaints are in the lower extremities. The claimant could perform a sit down job and have unrestricted use of his neck and upper extremities. Robert L. Turton, D.O., disinterested psychiatrist, found a 15%

4

impairment related to the allowed depression. Dr. Turton found this psychiatric condition is not work restrictive. Dr. Turton found a combined effects impairment of 28% of the whole person due to all allowed conditions. Dr. Holbrook reviewed all medical evidence in [the] file and concluded the claimant has a 55% impairment due to all allowed conditions. Dr. Holbrook reported the claimant can perform low stress sedentary employment.

"It is further further [*sic*] found this fifty-five (55) year old claimant has the vocational ability to perform work within his physical restrictions. The claimant has a high school education and has worked as a construction worker and coal mine foreman. The vocational evaluation by Judy L. Patton, M.S., indicates this is a semi-skilled work history. The 10-9-90 Vocational Evaluation by John Ruth, M.S., indicates that with additional rehabilitation services and short-term technical training[,] the claimant would be able to secure competitive employment in the near future. Based upon this report[,] it is found the claimant does have the potential to be re-trained for employment within his functional capacities. The claimant's age of 55, high school education and work experience as a foreman would be assets in the rehabilitation effort. The 3-26-91 addendum from J. Ruth, M.S., is not found persuasive as he finds no rehabilitation potential based upon outdated psychiatric evaluations from Raymond Boniface and Earl Greer. Mr. Ruth did not indicate he considered the more current psychiatric evaluation by R. Turton, D.O., which indicates the psychiatric condition is not work prohibitive. It is further noted the I.C. rehabilitation division initially found rehabilitation potential for the claimant. The case was subsequently closed in large part due to poor motivation on the part of the claimant. The closure summary indicates [that] the claimant had questionable motivation and that he did not want to work for low pay and didn't know what he could do to make as much money as he is making while collecting Social Security Disability Income and compensation. Therefore, as the claimant

can be retrained for sustained remunerative employment within his functional capacities[,] he is not permanently and totally disabled."

{¶ 6} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying further permanent total disability compensation. The court of appeals, citing its decision in *State ex rel. Draganic v. Indus. Comm.* (Sept. 22, 1994), Franklin App. No. 93APD10-1491, unreported, 1994 WL 521157, held that the commission, absent new and changed circumstances, was bound by the finding of permanent total disability made in its June 13, 1990 interlocutory order. The court of appeals accordingly granted a writ, which vacated the order denying permanent total disability compensation.

{¶ 7} The cause is now before this court upon an appeal as of right.

_____

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald E. Slipski* and *Steven L. Paulson*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Patsy A. Thomas*, Assistant Attorney General, for appellant.

_____

***Per Curiam.***

{¶ 8} The court of appeals based its vacation of the commission's order exclusively on its decision in *State ex rel. Draganic.* We have since reversed *Draganic,* holding that an interlocutory award of permanent total disability compensation does not conclusively establish a claimant's right to continue permanent total disability compensation beyond the closed period awarded in the order. *State ex rel. Draganic v. Indus. Comm.* (1996), 75 Ohio St.3d 461, 663 N.E.2d 929.

{¶ 9} In this case, no other challenge to the commission's order denying further permanent total disability compensation has been made. Given our reversal

of *Draganic* and the absence of any challenge to the evidentiary sufficiency of the commission's order, our review can go no further.

{¶ 10} Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

———————————