DECISION
{¶ 1} Relator, Thomas A. Ferrell, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation but granting the continuing payment of temporary total disability compensation, and to enter an order granting his permanent total disability application.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate determined the commission (1) may, but is not required, to grant permanent total disability compensation where a claimant has multiple allowed conditions but less than all of the conditions are permanent and work-prohibitive, and (2) did not abuse its discretion in denying permanent total disability compensation to relator, as relator continues to receive temporary total disability compensation, may re-apply for permanent total disability compensation when temporary total disability benefits are terminated, and thus cannot demonstrate any loss.
 {¶ 3} Both the Industrial Commission and relator have filed objections to the magistrate's conclusions of law, asserting the commission's staff hearing officer erroneously interpreted Ohio Adm. Code 4121-3-34(D)(1)(f) to require that even though some of the allowed conditions may be permanent and work-prohibitive, permanent total disability compensation must be denied if any of the allowed conditions has not reached maximum medical improvement. Contrary to the staff hearing officer's interpretation, the commission and relator assert that administrative code provision is "not intended to be applied in situations where one allowed condition may be temporary" if "other allowed conditions render the claimant both permanently and totally disabled from engaging in sustained remunerative employment, as is the situation in the present case." (Commission objections, 2-3.) According to the commission, a position relator joins, "[o]nce physical permanent and total disability is found, that should be the end of the inquiry. The law does not require [permanent total disability] claimants to fulfill all other procedural requirements necessary to prove [permanent total disability] on other bases, such as psychological disabilities." (Commission objections, 3.)
 {¶ 4} Although respondent Trans Fleet Enterprises, Inc. continues to adhere to the staff hearing officer's order, the objections of relator and the Industrial Commission are persuasive. As the Ohio Supreme Court noted in State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v.Haygood (1991), 60 Ohio St.3d 38, 39-40, "[c]ontrary to Dresser's suggestion, a claimant who has multiple allowed conditions is not required to show that each condition, standing alone, is work-prohibitive. Here, regardless of claimant's mental status, he is physically unable to work. An unimpaired psychological state will not lessen or improve that physical incapacity."
 {¶ 5} The same rationale applies to the facts of this case. Relator's physical conditions, according to the reports of Drs. Richards and Rutherford, are permanent and work-prohibitive. His psychological condition bears the potential for improving, but even if he were to be totally unimpaired psychologically, his physical conditions, if the noted reports are found persuasive, render him incapable of sustained remunerative employment. Accordingly, the Industrial Commission properly should have determined the merits of relator's application for permanent total disability compensation.
 {¶ 6} Moreover, contrary to the magistrate's conclusions, State exrel. Lantz v. Indus. Comm. (1993), 66 Ohio St.3d 29, is not controlling on the facts of this case. We see no reason a claimant, such as relator, must file multiple applications for permanent total disability compensation when his condition at the time of application not only is work-prohibitive, but will remain so.
 {¶ 7} Accordingly, we sustain the objections of relator and the Industrial Commission.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts, and we adopt those as our own. For the reasons set forth in this decision, we grant a limited writ of mandamus, directing the Industrial Commission to vacate its order denying relator's application for permanent total disability compensation and to issue a new order that re-determines relator's permanent total disability application consistent with this decision.
Objections sustained; limited writ granted.
French and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Thomas A. Ferrell,
 :
 Relator,
v. : No. 04AP-948
Industrial Commission of Ohio and (REGULAR CALENDAR)
Trans-Fleet Enterprises, Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on February 28, 2005 Agee, Clymer, Mitchell Laret, and C. Russell Canestraro, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Reminger Reminger Co., L.P.A., and Mick L. Proxmire, for respondent Trans Fleet Enterprises, Inc.
 IN MANDAMUS {¶ 9} In this original action, relator, Thomas A. Ferrell, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation but granting the continuing payments of temporary total disability ("TTD") compensation, and to enter an order granting the PTD application.
Findings of Fact:
 {¶ 10} 1. On November 7, 2001, relator sustained an industrial injury while employed as a truck driver for respondent Trans Fleet Enterprises, Inc. ("Trans Fleet"), a state-fund employer under Ohio's workers' compensation laws. The industrial claim is allowed for:
[S]prain of neck; sprain thoracic region; sprain lumbosacral; fracture dorsal vertebra closed; cervical spondylosis; thoracic spondylosis; lumbosacral spondylosis; bilateral carpal tunnel syndrome; depressive disorder nec; generalized anxiety disorder.
The industrial claim is assigned claim number 01-862559.
 {¶ 11} 2. Relator has not worked since the date of his injury. He began receiving TTD compensation based upon the physical conditions of his claim based upon reports from his treating chiropractor Gregory A. Richards, D.O.
 {¶ 12} 3. On June 3, 2003, relator was examined by orthopedic surgeon E. Gregory Fisher, M.D., on behalf of the Ohio Bureau of Workers' Compensation ("bureau"). Dr. Fisher opined:
The claimant sustained sprains of the neck, back and thoracic region, as well as cervical, thoracic and lumbosacral spondylosis, fracture of the dorsal vertebra and bilateral carpal tunnel syndrome. He has been treated extensively as discussed above. With regard to his carpal tunnel releases, the pain has subsided for the most part, as well as the paresthesias. The numbness has persisted and may continue to do so for several more months, which is not unusual. It may take 12 months to 18 months for all the symptomatology to reach a plateau with regard to his carpal tunnel release. No additional surgeries are planned for either wrist. Dr. White, Neurosurgeon, has reviewed the claimant's neck and back symptoms and did not recommend any surgical intervention for these areas. The claimant's condition has remained static for quite a while now and it has not really changed, over the last year with regard to his neck and back. He has reached maximum medical improvement for all of his allowable claims to his neck and back and no further fundamental, functional or physiologic changes can be reasonably expected in the claimant's condition, despite continued medical treatment, therapy or other interventions. He has reached maximum medical improvement with regard to his neck, thoracic and lumbar regions, as well as for the spondylolysis over the cervical, thoracic and lumbar regions. He has reached maximum medical improvement for the fracture of the dorsal vertebra. He has also reached maximum medical improvement for his carpal tunnel syndrome bilaterally.
* * *
I do not feel that the injured worker can return to his former position of employment as a truck driver due to the chronic pain over his neck and back areas. * * *
I believe that the only type of work he will be able to do in the future would be of a light duty status work, sedentary work, work that does not require repetitive movements, no bending, twisting of the back. The claimant will not be able to carry/lift over 10-15 pounds frequently and occasionally 20 pounds. The claimant should not perform work that involves standing and walking more than 1-2 hours in an 8 hour period. He should sit no more than 3-4 hours in an eight hour period.
 {¶ 13} 4. On July 26, 2003, clinical psychologist Michael A. Murphy, Ph.D., certified on form C-84 that relator is temporarily and totally disabled based upon the allowed psychological conditions of the claim.
 {¶ 14} 5. Following an August 20, 2003 hearing, a district hearing officer ("DHO") issued an order finding that all of the allowed physical conditions had reached maximum medical improvement ("MMI") based upon the report of Dr. Fisher. However, the DHO found that relator remains temporarily totally disabled due to the allowed psychological conditions based upon the C-84 from Dr. Murphy dated July 26, 2003. TTD compensation was ordered to continue based upon the allowed psychological conditions.
 {¶ 15} 6. Apparently, the DHO's order of August 20, 2003 was not administratively appealed.
 {¶ 16} 7. On October 28, 2003, relator filed an application for PTD compensation. In support, relator submitted a report dated September 9, 2003, from Dr. Richards, stating:
* * * It is my professional opinion that due to the poor prognosis of his physical condition, he is permanently and totally disabled from all employment. This disability is 100% related to his BWC injuries.
 {¶ 17} 8. On October 31, 2003, Dr. Richards wrote:
Based on the depth and chronicity of his injuries, varied attempts to rehabilitate his injuries, and the fact that spinal surgery was never recommended, it appears that the injuries were sufficiant [sic] to bring about a total and permanent disablement for Mr. Ferrell. * * *
 {¶ 18} 9. On February 19, 2004, relator was examined, at the commission's request, by orthopedist James Rutherford, M.D. Dr. Rutherford wrote:
* * * Based only on the orthopedic claim allowances and the functional limitations related to those claim allowances for claim #01-862559, it's my medical opinion that Mr. Thomas Ferrell is not capable of physical work activity and I've indicate[d] this on the physical strength rating form.
 {¶ 19} 10. Also on February 19, 2004, relator was examined, at the commission's request, by psychologist Earl F. Greer, Jr., Ed.D. Dr. Greer wrote:
* * * The claimant has not reached maximum medical improvement with him reporting only having had limited involvement in psychological/psychiatric treatment.
* * *
* * * The degree of emotional impairment due to his industrial accident on 11-7-2001 would currently be expected to solely prevent him from returning to his former position of employment. * * *
(Emphasis sic.)
 {¶ 20} 11. On April 8, 2004, a staff hearing officer ("SHO") mailed a tentative order granting relator's PTD application. The tentative order stated:
This order is based upon the reports of Drs. Richards and Rutherford.
The injured worker's application is supported by the 09/09/2003 report from Dr. Richards, who indicated that Mr. Farrell is permanently and totally disabled from all employment due to the injures in this claim.
The injured worker was examined on behalf of the Industrial Commission on 02/19/2004 by Dr. Rutherford, an orthopedic specialist. After a thorough review of information and physical examination, Dr. Rutherford found the injured worker to have significant orthopedic functional limitations, including limitations on lifting, standing and walking, and sitting. It was Dr. Rutherford's opinion that the injured worker is not capable of physical work activity.
Based on the reports of Drs. Richards and Rutherford, it is found that the injured worker is medically unable to perform any type of sustained remunerative employment. Further consideration of the non-medical disability factors is not required. It is found that the injured worker is permanently and totally disabled due to the physical conditions allowed in this claim.
 {¶ 21} 12. Trans Fleet filed an objection to the April 8, 2004 tentative order.
 {¶ 22} 13. Following a July 7, 2004 hearing, another SHO issued an order stating:
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 10/28/2003, for Permanent and Total Disability Compensation, is denied.
The tentative order mailed 04/08/2004 is vacated.
The PTD application filed 10/28/2003 is denied.
The injured worker is found to remain temporary total disability [sic] related to allowed conditions in the claim.
Dr. Murphy continues to certify the injured worker as temporarily and totally disabled. The injured worker continues to receive temporary total disability compensation in this claim. Dr. Earl Greer in his 02/19/2004 report prepared on behalf of the Industrial Commission states the injured worker remains temporary total and totally disabled related to this claim. This decision is based on Ohio Administrative Code4121-3-34(D)(1)(f).
 {¶ 23} 14. Relator requested reconsideration of the SHO's order of July 7, 2004. On August 11, 2004, the commission mailed an order denying reconsideration.
 {¶ 24} 15. On September 17, 2004, relator, Thomas A. Ferrell, filed this mandamus action.
Conclusions of Law:
 {¶ 25} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D) sets forth the commission's "guidelines" for the adjudication of PTD applications. The rule states that the guidelines shall be followed by the adjudicator in the "sequential evaluation" of PTD applications.
Ohio Adm. Code 4121-3-34(D)(1)(f) states:
If, after hearing, the adjudicator finds that the injured worker's allowed medical condition(s) is temporary and has not reached maximum medical improvement, the injured worker shall be found not to be permanently and totally disabled because the condition remains temporary. In claims involving state fund employers, the claim shall be referred to the administrator to consider the issuance of an order on the question of entitlement to temporary total disability compensation. * * *
Ohio Adm. Code 4121-3-34(D)(1)(h) states:
If, after hearing, the adjudicator finds that the allowed condition(s) is the proximate cause of the injured worker's inability to perform sustained remunerative employment, the adjudicator is to proceed in the sequential evaluation of the application for permanent and total disability compensation in accordance with the provisions of paragraph (D) of this rule. * * *
 {¶ 27} Here, relator filed a PTD application based upon the physical conditions of his industrial injury. He supported his application with a report from his chiropractor, Dr. Richards. Later, examining on behalf of the commission, Dr. Rutherford opined that the allowed physical conditions of the claim preclude all physical work activity. Citing the reports of Drs. Richards and Rutherford, the commission issued a tentative order on April 8, 2004, finding that relator is permanently and totally disabled. The employer, Trans Fleet, objected.
 {¶ 28} Following a July 7, 2004 hearing before an SHO on the employer's objection, the SHO vacated the tentative order and denied the PTD application. However, the SHO continued payments of TTD compensation based upon the psychological claim allowances. The SHO stated that the decision is based upon Ohio Adm. Code 4121-3-34(D)(1)(f).
 {¶ 29} Citing State ex rel. Galion Mfg. Div. Dresser Industries, Inc.v. Haygood (1991), 60 Ohio St.3d 38, relator argues that the commission was duty bound to adjudicate his PTD application based solely upon the physical conditions of the claim. Relator also argues that the commission was duty bound to enter a final order that the physical conditions of the claim result in PTD.
 {¶ 30} Relator's reliance on Galion is misplaced. In that case, the commission awarded the claimant PTD compensation based upon the reports of Drs. Retter and Lyons. Dr. Retter found that the claimant was permanently and totally disabled due to the physical conditions of the claim. Dr. Lyons, a psychologist, concluded that the claimant could not engage in sustained remunerative employment but stated that "prognosis for improvement through treatment is encouraging." In mandamus, the employer challenged the report of Dr. Lyons, but did not challenge the reports of Dr. Retter. The writ was denied on grounds that Dr. Retter's reports were some evidence supporting TTD compensation. The Galion court also rejected the employer's suggestion that a claimant with multiple allowed conditions must show that each condition, standing alone, is work prohibitive.
 {¶ 31} Contrary to relator's suggestion here, Galion does not address the issue of whether the commission is required to adjudicate a PTD claim based upon less than all allowed conditions when one of the conditions the claimant has not relied upon to support PTD remains temporary.
 {¶ 32} Moreover, Ohio Adm. Code 4121-3-34(D)(1)(f) does not directly address the issue. Apparently, relator would have this court construe Ohio Adm. Code 4121-3-34(D)(1)(f) to apply only if the condition found to be temporary is a condition that the claimant specifically relied upon to support PTD. Relator argues that Ohio Adm. Code 4121-3-34(D)(1)(f) is in conflict with 4121-3-34(D)(1)(h) and that, to resolve the conflict, this court should give Ohio Adm. Code 4121-3-34(D)(1)(f) the interpretation that relator seeks here.
 {¶ 33} The magistrate does not find that the rules are in conflict. Apparently, relator would have this court insert the word "all" or "any" before the words "sustained remunerative employment" in Ohio Adm. Code4121-3-34(D)(1)(h) in order to render the rules in conflict. Pointing to the word condition(s) in Ohio Adm. Code 4121-3-34(D)(1)(h), relator argues that "[a]s long as one condition was the proximate cause of Claimant's inability to perform sustained remunerative employment, the Adjudicator should proceed to the PTD sequential evaluation process." (Relator's brief, at 5.)
 {¶ 34} Relator's argument that the two rules are in conflict is unpersuasive. Relator's argument is flawed at least in part by his reading language into the rules that is not there.
 {¶ 35} Significantly, while the commission denied relator's PTD application, it continued the payments of TTD compensation. R.C. 4123.56(A) and 4123.58(A) provide respectively that TTD and PTD compensation shall be paid based upon 66 and two-thirds percent of the employee's AWW subject to a maximum and minimum amount of weekly compensation. While the maximum and minimum amounts are different for TTD and PTD compensation, relator does not contend here that the weekly rate of TTD compensation currently being paid is any less than the rate he would have received if his PTD application had been granted. Presumably, relator cannot claim that his weekly compensation has been reduced because of the commission's decision.
 {¶ 36} An "inability to demonstrate any loss" was the court's stated reason for denying mandamus review in State ex rel. Lantz v. Indus.Comm. (1993), 66 Ohio St.3d 29, 31. In that case, Terry L. Lantz had a PTD award that was challenged by the employer seeking reconsideration. In response to the employer's reconsideration motion, the commission ordered a rehearing of the PTD application but further directed that the PTD award remain in full force and effect until rehearing and a final commission order. The Lantz court stated that, if the commission ultimately denies PTD benefits, then mandamus review may be appropriate. Finding the action to be "premature," the Lantz court dismissed the complaint.
 {¶ 37} In the magistrate's view, the reasoning of the Lantz decision compels this court to deny relator's request for a writ of mandamus because relator cannot demonstrate a loss resulting from the commission's decision. While relator would obviously prefer to have a lifetime award of PTD compensation rather than a TTD award subject to termination based upon MMI, he can re-apply for PTD compensation when his TTD award is terminated. The commission's decision here does not foreclose future PTD compensation.
 {¶ 38} Moreover, the commission's tentative order does not bestow upon relator a clear legal right to be declared permanently and totally disabled as relator seems to suggest here. The tentative nature of the order indicates that it was subject to objection and to further review by the commission or its hearing officers. See State ex rel. Draganic v.Indus. Comm. (1996), 75 Ohio St.3d 461. Accordingly, relator's argument regarding the sufficiency of other medical evidence that the tentative order did not rely upon is inappropriate here. (Relator challenges Dr. Sterle's report at page 6 of his brief.)
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.