DECISION
{¶ 1} Relator, Michael C. Boyle, has filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order finding relator is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of facts and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has filed two objections to that decision. Relator first contends the magistrate's decision fails to take into account the lack of evidence for the commission's decision due to internal inconsistencies in the report of commission specialist Dr. Timothy Fallon. Second, relator argues that the magistrate's conclusion ignores medical restrictions noted by Dr. Fallon in his report.
 {¶ 4} Relator cites the following language from Dr. Fallon's report in support of his claim that it is internally inconsistent: "This gentleman has significant bilateral shoulder problems that would preclude his using his arms in normal fashion and that is out in front of him or above even chest height. He would be capable from the strength rating only of sedentary type of strength activities." Relator contends that the above finding is inconsistent with Dr. Fallon's further assessment that relator is capable of sedentary work.
 {¶ 5} The magistrate determined that the fact Dr. Fallon opined relator would be precluded from using his hands out in front of him or above chest height did not mean that he could not perform some sedentary work. The magistrate cited the definition of "sedentary work" under Ohio Adm. Code 4121-3-34(B)(2)(a), which states:
 {¶ 6} " `Sedentary work' means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
 {¶ 7} The magistrate noted the above definition constitutes the upper limits of force required for a job to still be considered sedentary, and that there are some sedentary jobs where the employee does not exert up to ten pounds occasionally. The magistrate found that relator's argument ignored all of those jobs. The magistrate concluded that Dr. Fallon did not limit relator to something less than sedentary work, and therefore the report was not internally inconsistent.
 {¶ 8} Upon review, we agree with the magistrate's determination that it is not inconsistent for Dr. Fallon to have found that, while relator has limitations regarding the use of his arms, he is still capable of performing some sedentary work activities. Under Ohio law, the commission need not find that a claimant is capable of a "full range of sedentary employment" in order to sustain a denial of PTD compensation. State ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414, 418; State ex rel. Roy v. Indus. Comm. (1998), 83 Ohio St.3d 199, 200.
 {¶ 9} We also find no merit to relator's contention that the magistrate's conclusions ignore the medical restrictions Dr. Fallon placed on relator's use of his arms in finding he could perform sedentary work. As indicated above, the magistrate found the restrictions Dr. Fallon placed on relator did not render him capable of something less than sedentary work. The magistrate further noted that the commission relied upon the vocational expert's opinion that relator could seek employment as an assembler, telephone solicitor and timekeeper, and that the commission also determined relator could seek employment as a cashier, surveillance system monitor, or in telemarketing.
 {¶ 10} Here, the magistrate could have reasonably found there was some evidence before the commission that, while restrictions on relator's ability to use his arms would limit the range of sedentary work he could perform, such limitation did not affect his ability to perform some sedentary work for which he was qualified, i.e., relator could still perform sedentary work consistent with his restrictions, including assembler, telephone solicitor, certain cashier positions, surveillance system monitor, etc. Because there was some evidence before the commission to find relator was capable of "some sustained remunerative employment," we find no error in the magistrate's determination on this issue. Roy, supra, at 200.
 {¶ 11} Based upon an examination of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own including the finding of facts and conclusions of law contained in it. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
PETREE, P.J., and KLATT, J., concur.
 IN MANDAMUS {¶ 12} Relator, Michael C. Boyle, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and that this court should find that relator is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315.
Findings of Fact:
 {¶ 13} 1. Relator has sustained two industrial injuries and his claims have been allowed as follows:
 {¶ 14} Claim number 98-616092: "sprain shoulder/arm NOS right; tear rotator cuff right; arthropathy, not otherwise specified, shoulder right; chondromalacia, right."
 {¶ 15} Claim number 97-333061: "sprain shoulder/arm, not elsewhere classified; sprain rotator cuff left; shoulder dislocation, not elsewhere classified left; rotator cuff syndrome left."
 {¶ 16} 2. On October 3, 2001, relator filed an application for PTD compensation. Relator was 66 years old at the time, had completed the 12th grade, and indicated that he could read, write and do basic math. Relator had also completed one year of college. Relator's work history consisted of working as a school custodian, courier for a delivery company, distributor of Archway Cookies, property assessment monitor and manager of a carryout which he owned. Relator served in the United States Army for two years before he earned an honorable discharge.
 {¶ 17} 3. In support of his PTD application, relator submitted a July 12, 2001 report of Dr. Timothy P. Duffey who opined that relator was disabled from any gainful employment.
 {¶ 18} 4. Relator was also examined by Dr. Timothy J. Fallon, commission specialist, who issued a report dated December 12, 2001. After listing his physical findings, Dr. Fallon assessed a 23 percent whole person impairment and specifically noted as follows:
 {¶ 19} "This gentleman has significant bilateral shoulder problems that would preclude his using his arms in normal fashion and that is out in front of him or above even chest height. He would be capable from the strength rating only of sedentary type of strength activities. * * *"
 {¶ 20} 5. An employability assessment report was prepared by Barbara E. Burk, M.A., CRC, LPC. Pursuant to the report of Dr. Fallon, Ms. Burk opined that relator could perform the following jobs: "Assembler; Telephone Solicitor; Timekeeper." Ms. Burk indicated further that, at age 66, relator was classified as a person closely approaching advanced age who would typically learn new, unfamiliar tasks more slowly. She considered his age to be a significant barrier to employment. With regard to his education, Ms. Burk indicated that relator can learn and perform semi-skilled and skilled work activities. His education was viewed as a vocational asset. Ms. Burk noted that relator's past work history ranged from unskilled to marginally semi-skilled work which did not enable him to develop skills which would transfer to sedentary work activities. She did see his past work experience however as indicating that he was capable of sustaining competitive work activity. Overall, she concluded that his work history was not viewed as one that would help him overcome barriers to employment.
 {¶ 21} 6. Relator's application was heard by a staff hearing officer ("SHO") on March 19, 2002, and resulted in an order denying him compensation. The SHO relied upon the medical report of Dr. Fallon and concluded that relator would be capable of engaging in sedentary employment based upon the allowed conditions in both claims. The commission also relied upon the vocational evaluation prepared by Ms. Burk. The commission conducted its own analysis of the vocational factors and stated as follows:
 {¶ 22} "On 02/01/2002 Ms. Barbara E. Burk, M.A., prepared an employability assessment report on behalf of the Industrial Commission. She noted that the claimant has above high school education and based upon this fact that he has the ability to learn and perform semi-skilled and skilled work activities, he is capable of sustaining competitive work activity based upon his past employment history. She found that the claimant's age is a significant barrier for employment and the fact that he has been out of the work force since 1998 is a barrier.
 {¶ 23} "* * *
 {¶ 24} "The claimant is an intelligent 66 year old male who completed one year of college. He has the ability to reason, learn new tasks, and maintain employment relationships. The claimant has demonstrated that he has these qualities that enhance his ability to seek and maintain employment. The claimant owned and operated his carry out. This activity required him to reason and solve problems related to the business, perform basic skills of owning a business, such [as] day to day contact with the public, using math and writing skills. The claimant also was a distributor for Archway cookies, this employment could describe as semi self employed relationship with Archway. He bought the cookies from Archway and distributed products to various stores. He had to keep records for ordering and reconciling the books for the products.
 {¶ 25} "* * *
 {¶ 26} "Ms. Burk prepared and employability assessment report for the Industrial Commission. She noted that the claimant's education is viewed as a vocational asset. She noted that the claimant's age would be a significant employment barrier.
 {¶ 27} "She further noted that the claimant physically has the ability to seek employment as assembler, telephone solicitor, and time keeper.
 {¶ 28} "The Staff Hearing Officer finds that the claimant has the ability to seek employment as parking lot cashier position that allows him to sit (and other cashier type positions that allow him to sit/stand at will, such as movie theater cashier, as surveillance monitor, and telemarketing.
 {¶ 29} "The Staff Hearing Officer acknowledges that the claimant's age is a barrier to employment. However, age by itself is not a basis for awarding permanent and total disability. All people will age.
 {¶ 30} "The Staff Hearing Officer further notes that the claimant left the work force in 1998 and has not made an attempt to return to the work force. The Courts have noted that permanent and total is the last resort not the first, that a person should try other avenues to re-entering the work force before applying for permanent and total disability."
 {¶ 31} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 33} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. Gay, supra. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 34} Relator contends that the commission's order is defective in the following ways: Dr. Fallon's report does not constitute some evidence upon which the commission can rely because his report is internally inconsistent; the commission ignored Dr. Fallon's restriction on the use of his arms; the commission abused its discretion by failing to adequately address and explain the Stephenson factors, specifically its treatment of his work history and the conclusion that relator could learn new skills. For the reasons that follow, this magistrate disagrees with relator's assertions.
 {¶ 35} Relator contends that Dr. Fallon's report is internally inconsistent. Relator directs this court's attention to that portion of Dr. Fallon's report wherein he stated that "[t]his gentleman has significant bilateral shoulder problems that would preclude his using his arms in normal fashion and that is out in front of him or above even chest height. He would be capable from the strength rating only of sedentary type of strength activities." Relator contends that, given the above restriction, he is limited to something less than sedentary work. As such, relator contends that Dr. Fallon's report is internally inconsis-tent because the doctor opined that relator was capable of sedentary employment while, at the same time, listing restrictions which indicated that relator was capable of less than sedentary work. This magistrate disagrees.
 {¶ 36} Sedentary work is defined in Ohio Adm. Code 4121-3-34(B)(2)(a) as follows:
 {¶ 37} "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
 {¶ 38} The above definition of sedentary work constitutes the upper limits of force required in a job for that job to still be considered sedentary by definition. Clearly, there are some sedentary jobs where the employee does not exert up to ten pounds of force occasionally. Relator's argument ignores all those jobs. Dr. Fallon did not limit relator to something less than sedentary work and his report is not internally inconsistent. The fact that Dr. Fallon opined that relator would be precluded from using his arms out in front of him or above chest height does not mean that relator cannot perform sedentary work and the commission did not abuse its discretion by relying upon Dr. Fallon's report.
 {¶ 39} Relator cites State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445, in support of this argument; however, Lopez does not apply to these facts. In Lopez, the commission relied upon the report of a doctor who found normal physical findings yet assessed a 50 percent impairment and concluded that the claimant could perform heavy foundry labor. Because the court was unable to reconcile these contradictions, it found that the report did not constitute some evidence. In the present case, Dr. Fallon listed his physical findings, found a 23 percent impairment and concluded that relator could perform sedentary employment. This simply is not a situation analogous to the one reviewed by the court in Lopez.
 {¶ 40} Relator also contends that the commission ignored the restrictions Dr. Fallon placed on the use of his arms in finding that he could perform sedentary employment. This magistrate disagrees. As stated previously, the restrictions Dr. Fallon placed on relator did not render him capable of something less than sedentary work and that the administrative code definition of sedentary work indicates the highest level of exertion which a job can have and still be qualified as sedentary. The commission relied on Ms. Burk's opinion that relator could seek employment as an assembler, telephone solicitor, and timekeeper. The commission also found that relator could seek employment as a parking cashier as well as other cashier positions, a surveillance system monitor, and in telemarketing. Relator has not demonstrated that the commission abused its discretion by failing to take into account Dr. Fallon's restrictions.
 {¶ 41} Relator also contends that the commission abused its discretion in its analysis of the Stephenson factors. Relator contends that the commission's treatment of his work history is somewhat ambiguous because the commission indicated that it relied on Ms. Burk's report but disagreed with some of her conclusions. Ms. Burk had concluded that relator's past work history would not help him overcome barriers to employment. She noted that his past jobs were unskilled to marginally semi-skilled and that they did not enable him to develop skills that would transfer to sedentary work activity. By comparison, the commission noted that relator had owned and operated his own carryout. The commission noted that this activity would have required him to reason and solve problems related to the business, perform basic skills of owning a business, such as day-to-day contact with the public, using math and writing skills. The commission also noted that relator had been a distributor for Archway Cookies and would have needed to keep records for ordering and reconciling his books for those products. Granted, the commission did not specifically state whether it found relator's work history to be positive or negative; however, every comment which the commission made concerning his prior employment was positive and indicates that the commission viewed his prior work history as favorable.
 {¶ 42} Relator also contends that the commission did not explain its conclusion that he would be able to learn new skills. In the order, the commission specifically noted relator's high school education as well as his having attended one year of college and Ms. Burk's opinion that relator's education indicates that he could learn and perform semi-skilled and skilled work activities for this conclusion. As such, contrary to relator's assertions, the commission did give a brief explanation for its conclusion that relator could learn new skills.
 {¶ 43} Given that this magistrate finds that the commission's order does not violate Noll, relief pursuant to Gay would be inappropriate.
 {¶ 44} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.